# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JENNIFER L. RYAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  3:25-cv-00325 |
| | § | |
| UNITED STATES DEPARTMENT OF | § | Jury Trial Demanded |
| JUSTICE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### Amended Complaint for Constitutional Violations and Tort Claims Arising from Malicious Prosecution and Wrongful Imprisonment

COMES NOW JENNIFER L. RYAN, Plaintiff, *pro se* and respectfully moves this Honorable Court to consider Plaintiff's redress of grievances and damages arising from wrongful prosecution. In support thereof, Plaintiffs state as follows:

**Preliminary Statement**

1. Plaintiff Jennifer L. Ryan was not prosecuted for a crime—she was targeted to serve a narrative, selected by the United States Government as a symbolic warning to silence political dissent. Falsely portrayed as a "white supremacist," "entitled," and "violent extremist" (*Ex. BB, Biden and Merrick Garland Statements, Jan.–Feb. 2021; Ex. BB-2, Washington Post Article, Jan. 21, 2021; Ex. EE, CBS DFW Broadcast, Jan. 2021*), Plaintiff's identity was mischaracterized to reinforce a politicized justice system. This action targets Assistant U.S. Attorney Karen

Rochlin's malicious conduct during the sentencing phase of Plaintiff's January 6, 2021, misdemeanor prosecution, distinct from the arrest, charging, and plea phases addressed in a separate claim. Entering post-plea in October–November 2021, Rochlin fabricated Plaintiff's character in sentencing arguments before Judge Christopher R. Cooper, portraying her 2-minute, non-violent Capitol entry as a violent "insurrection" and branding her an "entitled Karen" and "white supremacist" threat *(Ex. A, Sentencing Transcript, Nov. 4, 2021; Ex. C, Rochlin's Sentencing Memorandum, Oct. 2021)*.

2. These fabrications, lacking probable cause as confirmed by *Fischer v. United States* (2024), secured a 60-day sentence on November 4, 2021, violating due process and prosecutorial ethics. Rochlin's actions built on a coordinated narrative of political persecution, as acknowledged by Executive Order 14147 (Ex. U, Jan. 21, 2025) and declassified government reports *(Ex. BB-1.1, NCTC/DHS/FBI Report, Dec. 13, 2021, Declassified May 18, 2025)*, initiated by President Biden's January 20, 2021, call to confront "white supremacy" and "domestic terrorism" (Ex. BB), amplified by the FBI's "extremist threat high" framing *(Ex. BB-1, FBI Press Release, Jan. 2021; Ex. BB-4, CBS News, Jan. 15, 2021)*, media and social media attacks *(Ex. B-2, Social Media Compilation, Jan.–Nov. 2021; Ex. EE)*, and coordinated financial institution actions, as detailed in Plaintiff's related PayPal complaint *(Case No. 4:22-CV-559, refiled May 14, 2025)*. By inserting falsehoods, Rochlin exceeded prosecutorial discretion, negating immunity.

3. Plaintiff suffered $50 million in business losses, reputational harm, and 60 days' incarceration *(Ex. J, Report of Damages)*. Her Presidential Pardon on January 20,

2025 (Ex. R), affirms the injustice. This action seeks to hold Rochlin and the DOJ accountable for their malicious sentencing conduct and resulting constitutional violations.

## INTRODUCTION

4.  Plaintiff Jennifer L. Ryan, proceeding *pro se*, brings this action against Defendants United States Department of Justice (DOJ) and Assistant United States Attorney Karen E. Rochlin for prosecutorial misconduct in *United States v. Jennifer Leigh Ryan*, Case No. 1:21-cr-00050-CRC (D.D.C.). Defendants' actions violated Plaintiff's constitutional rights under the First, Fourth, and Fifth Amendments, as well as Texas tort law, resulting in wrongful prosecution, an excessive 60-day custodial sentence, catastrophic reputational harm, financial ruin, and severe emotional distress.

5.  This Amended Complaint is filed pursuant to agreement with the Department of Justice and serves multiple purposes: (1) to survive anticipated motions to dismiss, including claims of absolute immunity and FTCA prematurity; (2) to preserve and clarify the factual record in light of newly discovered evidence and subsequent presidential actions; and (3) to document the full scope of prosecutorial misconduct for purposes of resolution and historical accountability.

6.  On January 6, 2021, Plaintiff briefly entered the U.S. Capitol for approximately two minutes during a protest, engaging in no violence or destruction. Under immense public scrutiny and legal pressure, she pleaded guilty to a single misdemeanor count of Parading, Demonstrating, or Picketing in a Capitol Building *(40 U.S.C. § 5104(e)(2)(G))* on July 24, 2021 *(Ex. I)*. Despite her minimal conduct,

early cooperation, and expressed remorse, AUSA Karen Rochlin fabricated evidence, distorted Plaintiff's constitutionally protected speech, and leveraged the plea to pursue a media-fueled prosecution—securing a disproportionate 60-day sentence that prejudiced the court and devastated Plaintiff's life.

7. Plaintiff's presidential pardon on January 20, 2025 *(Ex. R),* Rochlin's firing for misconduct on or about January 25, 2025, and President Trump's Executive Order on "Ending the Weaponization of the Federal Government" *(Ex. U)* confirm the malicious and politically motivated nature of her prosecution, warranting substantial redress.

8. This complaint seeks redress through the following claims:

**Bivens Claims (Against Defendant Rochlin in her individual capacity):**

   a. **Claim 1:** Malicious Prosecution (Fourth Amendment)

   b. **Claim 2:** First Amendment Retaliation

   c. **Claim 3:** Due Process Violations (Fifth Amendment)

**FTCA Claims (Against the United States/DOJ):**

   d. **Claim 4:** Malicious Prosecution (under Texas law)

   e. **Claim 5:** Defamation and False Light

   f. **Claim 6:** Intentional Infliction of Emotional Distress (IIED)

9. Plaintiff seeks **$15,000,000** in compensatory damages; **$60,000,000** in punitive damages against Rochlin; Declaratory relief; discovery of government

communications, evidence, and internal DOJ notes; and any further relief the Court

deems just and proper

## JURISDICTION AND VENUE

1. This Court has jurisdiction under *28 U.S.C. § 1331* (federal question) for Bivens claims,

   *28 U.S.C. § 1346(b)(1)* for FTCA claims, and *28 U.S.C. § 1367* for supplemental state

   law claims. Venue is proper under *28 U.S.C. § 1391(e)* as Plaintiff resides in the Northern

   District of Texas, and a substantial part of the events giving rise to the claims (e.g.,

   Plaintiff's distress, reputational harm, business loss) occurred here.

2. This Court has jurisdiction under *28 U.S.C. § 1346(b)(1)* for FTCA claims. Plaintiff filed

   an administrative claim with the DOJ on May 5, 2025 for Rochlin's misconduct,

   including investigatory fabrications *(Ex. CC-1)*, defamatory statements *(Ex. Y-7)*, and

   sentencing escalation *(Ex. 4-1)*, which remains pending *(Ex. Z)*. Plaintiff requests a stay

   of proceedings if the claim is unresolved, pursuant to *28 U.S.C. § 2675(a)*.

3. The FTCA claim is timely, as the statute of limitations accrued on January 20, 2025,

   when Plaintiff discovered the DOJ's weaponization via Executive Order 14147 (*Ex. U;*

   *United States v. Kubrick*, 444 U.S. 111 (1979)).

## PARTIES

4. **Plaintiff Jennifer L. Ryan** is a resident of Richardson, Texas, within the Northern

   District of Texas. She is a real estate broker and former social media influencer who was

   wrongfully prosecuted and sentenced in *United States v. Jennifer Leigh Ryan*, Case No.

   1:21-cr-00050-CRC, and received a presidential pardon on January 20, 2025 *(Ex. R)*.

5. **Defendant United States Department of Justice** is a federal agency responsible for the actions of its employees, including Rochlin, under the *FTCA (28 U.S.C. § 2671 et seq.)*. The DOJ's misconduct in Plaintiff's prosecution caused her injuries.

6. **Defendant Karen E. Rochlin** is a former Assistant United States Attorney who prosecuted Plaintiff's case during the month before sentencing. Acting within the scope of her federal employment, Rochlin engaged in investigatory and advocative conduct that included fabricating evidence, mischaracterizing protected speech, and making false statements that violated Plaintiff's constitutional rights.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Minimal Conduct on January 6, 2021

7. On January 5, 2021, Plaintiff traveled from Texas to Washington, D.C., to attend the *"Stop the Steal"* rally at the Ellipse, motivated by her belief in election fraud concerns. She had no intent to engage in violence or enter the Capitol *(Ex. AA, Declaration of Jennifer Ryan)*.

8. On January 6, 2021, at approximately 7:00 a.m., Plaintiff livestreamed her walk to the Ellipse, engaging in constitutionally protected speech about political issues, including concerns over election integrity. During the stream, Plaintiff used the phrase "prelude to war" as political rhetoric *(Ex. C, p. 6, ¶ 2)*. AUSA Karen Rochlin falsely characterized this video as evidence that Plaintiff was walking toward the Capitol, in an effort to frame her as an escalating threat and justify incarceration *(Ex. 4, Rochlin email; Ex. C-1, Ex. A-6)*.

9. After the rally, Plaintiff returned to her hotel, where television coverage showed people calmly walking through velvet ropes inside the Capitol. Believing the

protest to be peaceful, she went to the Capitol with others and entered through an open door near a Capitol Police officer who made no effort to stop or warn her *(Ex. A-4; Emails 4)*. Plaintiff remained inside for approximately two minutes, expressed discomfort ("I don't want to be in here"), and exited voluntarily. She engaged in no violence, vandalism, or confrontational behavior *(Ex. A-4, Sentencing Transcript; Ex. 4, Feb. 27, 2021 email)*.

10. AUSA Karen Rochlin had to fabricate Plaintiff's supposed foreknowledge of violence to justify a custodial sentence, despite no evidence that Plaintiff anticipated or intended to participate in any unlawful conduct. *(Ex. A-3 Sentencing Memo, and Ex. CC-2, CC-3 Tables Showing Rochlin's knowingly fabricated claims and claims without evidentiary support)*.

11. Plaintiff's conduct was peaceful, as acknowledged by the court *(Ex. A, p. 41:8–12)*, the PSR and resulted in a single misdemeanor charge under *40 U.S.C. § 5104(e)(2)(G) (Ex. I)*. She carried only a cell phone, not weapons, and caused no harm *(Ex. A-4, A-6)*. Her presidential pardon on January 20, 2025, recognized the injustice of her prosecution.

**B. Plaintiff's Cooperation and Remorse**

12. Plaintiff demonstrated early cooperation and remorse, which Defendants suppressed:

   a. **January–February 2021**: Plaintiff surrendered her phone and computer to the FBI without a warrant, provided passwords, and disclosed her media sources *(Ex. 4 March 2021 emails; Ex. A, p. 33:16–35:15, A-6)*.

   b. **January 21, February 23, February 27, 2021**: Plaintiff emailed her attorneys about police facilitation and her discomfort, evidencing no violent intent *(Ex. 3-8 emails)*.

c.  **February 19, 2021**: Plaintiff's attorney informed the government of her acceptance of responsibility *(Ex. 4; Ex. A, pp. 34:20–36:2)*.

d.  **March 2021**: Plaintiff consented to provide phone passwords, offered a lie detector test, and provided extensive PSR documentation *(Ex. 6 emails)*.

e.  **May 2021**: Plaintiff requested a plea deal, expressing distress and fear of prison *(Ex. 4, 5 and 8 emails)*.

f.  **July 24, 2021**: Plaintiff pleaded guilty to one misdemeanor count, agreeing to $500 restitution *(Ex. I; Ex. A, p. 5:6–16)*.

g.  **September 2, 2021**: Plaintiff expressed remorse to the PSR agent, stating she was "not proud" of her actions *(Ex. 11; Ex. C, p. 19, ¶ 1)*.

h.  **November 4, 2021**: Plaintiff apologized in court, affirming her regret *(Ex. A, p. 40:17–22)*.

## C. Coerced Guilty Plea

13. Plaintiff's guilty plea on July 24, 2021, to a single misdemeanor count *(Ex. I)* was coerced due to DOJ's overcharging and threats. Plaintiff faced four misdemeanor charges for her 2-minute-and-8-second non-violent presence in the Capitol *(Ex. A, Sentencing Transcript, p. 41:8–12)*, with threats of up to five years' imprisonment if she went to trial based on the government's 99% conviction rate *(Ex.7, May 2021 emails)*. In February 2021, AUSA Blake agreed to pretrial diversion, a guilty plea, and one year of probation, but DOJ supervisors overruled this, forcing harsher charges and plea terms *(Ex. 3, Feb. 19, 2021 email; Ex. CC-6)*. This coercion, coupled with Rochlin's later suppression of cooperation *(Ex. 3; Ex. CC-1, Oct. 8, 2021)* and media-driven prosecution *(Ex. Y, Y-1 -*

*11)* and public harassment *(Ex. B-2)*, rendered the plea involuntary, negating collateral estoppel for claims challenging the prosecution and sentencing (*Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

14. On January 15, 2021, the FBI raided Plaintiff's home in Dallas, Texas, seizing phones, a computer, and a MAGA hat, as documented by a property receipt *(Ex. BB-5)*. This seizure, targeting Plaintiff's political expression as a Trump supporter, lacked probable cause and initiated a campaign of political persecution, publicized by CBS *(Ex. BB-4, BB-6, EE)* and coordinated with PayPal's January 21, 2021, ban *(Ex. BB-3)*. The raid set the stage for Rochlin's sentencing-phase fabrications, falsely portraying Plaintiff as a "white supremacist" and "violent extremist" *(Ex. C)*, contributing to her 60-day sentence (Ex. A-5).

## D. Defendants' Prosecutorial Misconduct

15. Despite Plaintiff's minimal conduct and extensive cooperation, and the **PSR Report recommending 24 months of probation**, without interviewing or speaking to Plaintiff, Rochlin engaged in egregious misconduct to secure a 60-day custodial sentence, *(Ex. A-6)* leading to her termination, including:

    a. **Fabricated Evidence:** Rochlin falsely asserted:

        i. Plaintiff chanted "Hang Mike Pence" *(Ex. C, p. 9, ¶ 1; Ex. A, p. 17:5–12, Ex. A-2, A-3)*,

        ii. was "sprayed" with pepper spray *(Ex. C, p. 17, ¶ 1);*

        iii. and began walking toward the Capitol as early as 7:00 a.m. *(Ex. 1, Rochlin email; Ex. C-1)*—all without any supporting evidence.

b. **Misrepresented Protected Speech**: Rochlin punished Plaintiff's speech, e.g., "prelude to war" *(Ex. C, p. 6, ¶ 2),* "best day of my life" tweet *(Ex.C, p. 3, ¶ 2),* and "blonde hair, white skin" tweet *(Ex. C, p. 25, ¶ 3)*, as evidence of violent intent or impunity *(Ex. CC-5).*

c. **Character Smears**: Rochlin misused private texts with Plaintiff's dying mother to imply profiteering *(Ex. C, p. 8, fn. 5)* and cited irrelevant 2008 misdemeanors to suggest criminality *(Ex. C, p. 20, ¶ 2).*

d. **Media-Driven Prosecution**: Rochlin's **28-page memorandum** *(Ex. C)* and focus on Plaintiff's social media *(Ex. C, p. 16; Ex. A, p. 19:5–20:5)* fueled a public spectacle, amplified by media including The Dallas Morning News, CBS, NBC and FOX News *(Ex. Y-1–Y-11; Ex. C-1, and CC-6, Ex. A-5, Ex. 10, 11).*

e. **Suppressed Cooperation**: Rochlin ignored Plaintiff's early plea efforts *(Ex. 3, Feb. 19, May 2021),* password consent *(Ex. 6, April 2021),* and PSR remorse *(Ex. 13),* falsely claiming non-cooperation and deceit *(Ex. C, p. 19; Ex. C-1).*

## C.1 Rochlin's Last-Minute Involvement and Improper Sentencing Escalation

16. In February 2021, AUSA Frances Blake determined that Plaintiff was eligible for pretrial diversion, including a plea to a single misdemeanor and a recommended sentence of one year probation *(Ex. 3)*. However, DOJ supervisors declined to approve the offer, and the government's posture began to shift. In late March 2021, following weeks of online harassment and media attacks, Plaintiff responded defensively to a hostile tweet. That response—intended as pushback against mass vilification—was taken out of context, mischaracterized by the press, and rapidly went viral *(Ex. AA, Declaration; Ex. B-1, B-2)*. Shortly thereafter, Blake informed Plaintiff's counsel that **"the Judge saw the tweet and**

**he was angry,"** (indicating ex-parte communication) and Blake revised her sentencing recommendation to 30 days of in-home confinement *(Ex. 9)*.

17. Then, on or about October 8, 2021—just one month before sentencing—AUSA Karen Rochlin was abruptly assigned to Plaintiff's case, replacing AUSA Frances Blake *(Ex. B, Ex. 12)*. This change occurred after months of escalating media coverage and public outrage. Despite Plaintiff's guilty plea, full cooperation, and non-violent conduct—and despite the Pre-Sentence Report recommending 24 months of probation *(Ex. A-1)*—Rochlin escalated the government's sentencing recommendation to 60 days of incarceration. relying on fabricated evidence and improper motives. This shift aligned directly with a viral media narrative that falsely portrayed Plaintiff as a racist, white supremacist, and violent insurrectionist deserving years in prison and influencing the Court. *(Ex. Y, Y-1 to Y-11, Media Articles Ex. B-2 Social Media Commentary, Ex. B-3)*.

18. Once AUSA Karen Rochlin took over the case, she falsely branded Plaintiff a "liar" without ever speaking to her *(Ex. AA; Ex. C, Sentencing Memorandum),* disregarded prior recommendations from both AUSA Blake and the PSR, *(Ex. B, B-1)* and filed a 29-page sentencing memorandum filled with factual distortions and inflammatory mischaracterizations *(Ex. C, C-1, 13)*. What began as a cooperative plea process—grounded in Plaintiff's non-violent conduct and demonstrated remorse—was transformed into a retaliatory and punitive prosecution, driven by media outrage, political optics, and public pressure. The result was an unprecedented 60-day custodial sentence for a peaceful misdemeanor offense.

19. AUSA Rochlin' abrupt escalation of the government's sentencing position to a disproportionate 60-day custodial sentence, relying on fabricated evidence and improper

motives reflected a media-fueled and politically charged prosecution, consistent with DOJ's broader weaponization of January 6 cases *(Ex. CC-1-6; Ex. 4, March 2021 email regarding the "blonde hair" tweet)*. Plaintiff first became aware of this systemic targeting on January 20, 2025, upon review of Executive Order 14147 *(Ex. U)*, which confirmed the political manipulation behind her prosecution.

20. The DOJ's March 8, 2021, guidelines labeled January 6th cases as 'DVE-related,' requiring Counterterrorism Section review (Ex. DD, Jana Winter, Yahoo News, May 11, 2021). This policy secretly categorized Plaintiff as a domestic violent extremist, overriding AUSA Blake's lenient recommendation (Ex. 3) and prompting Rochlin's punitive escalation, despite Plaintiff's non-violent conduct and cooperation (Ex. A-4, Ex. 3).

21. Declassified government reports *(Ex. BB-1.1, NCTC/DHS/FBI Report, Dec. 13, 2021, Declassified May 18, 2025)* confirm that Rochlin's assignment on October 8, 2021, aligned with a DOJ-led campaign to label January 6 defendants, including Plaintiff, as "domestic violent extremists" (DVEs) under March 2021 guidelines *(Ex. DD)*. Ex. BB-1.1 details DOJ's doubled DVE investigations in 2021, with 61% targeting J6 participants, and notes the mischaracterization of protected speech as extremist, providing pretext for Rochlin's fabrications *(Ex. C, CC-1–CC-5)*. This campaign extended to financial institutions and media, as evidenced by a CBS DFW broadcast *(Ex. EE, Jan. 2021)* reporting Plaintiff's January 15, 2021, FBI arrest and January 21, 2021, PayPal payment platform access ban, accompanied by 30 pages of comments vilifying Plaintiff as "entitled" and deserving of prison. Ex. EE suggests coordinated FBI/CBS/PayPal actions, detailed in Plaintiff's related PayPal complaint *(Case No. 4:22-CV-559)*, which

amplified the "extremist" narrative *(Ex. BB-1, BB-4, BB-6, Y-7)* and prejudiced the court, contributing to Plaintiff's 60-day sentence *(Ex. A-5)*.

**C2. Rochlin's Investigatory Misconduct and Resulting Harm**

22. Rochlin's late-stage assignment to the case forced her to undertake rushed investigatory tasks aimed at justifying a harsher sentence—tasks that fell outside her advocative role and are not protected by absolute prosecutorial immunity (see *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). These investigatory acts, detailed in Exhibit CC-1, include:

   a. **October 8, 2021:** Rochlin emailed the PSR officer to inquire about Plaintiff's movements in video footage, falsely suggesting Plaintiff walked toward the Capitol to imply violent intent *(Ex. CC-1; Ex.1 Rochlin's email to probation)*. This investigatory evidence review, conducted post-plea but pre-sentencing, tainted the PSR's analysis and contributed to a prejudicial sentencing recommendation, despite the PSR's ultimate probation recommendation *(Ex. A-1)*.

   b. **November 4, 2021:** During the sentencing hearing, Rochlin presented a fabricated timeline combining morning and afternoon video clips, stating, "As best I can place things on the timeline…" *(Ex. CC-1; Ex. A, p. 10:5)*. This timeline, synthesized through her investigatory analysis of digital evidence, falsely portrayed Plaintiff as intending violent entry, contradicting the PSR's finding and the Court's finding of peaceful conduct and the court's acknowledgment of no violence *(Ex. A-4)*. This misrepresentation misled the court, directly contributing to the 60-day custodial sentence *(Ex. A, p. 47:17–48:2)*.

   c.

d.  **Sentencing Memorandum, Page 16:** Rochlin analyzed Plaintiff's private text message from January 13, 2021, sharing a viral tweet screenshot, to argue Plaintiff sought notoriety and lacked remorse *(Ex. CC-1; Ex. C, p. 16, B-4)*. This psychological profiling, an investigatory task, misrepresented Plaintiff's intent and punished her protected First Amendment speech, escalating the sentence beyond the PSR's recommendation *(Hartman v. Moore, 547 U.S. 250 (2006))*.

e.  **Sentencing Memorandum, Page 16 (Footnote)**: Rochlin conducted third-party research on Plaintiff's social media metrics (e.g., YouTube subscribers, tweet likes) **to speculate she posed a future danger due to her influence** *(Ex. CC-1; Ex. C, p. 16, fn.)*. This investigatory analysis, not legal advocacy, further prejudiced the court by exaggerating Plaintiff's culpability, justifying the custodial sentence over probation.

23. Rochlin's escalation was not grounded in law or evidence but rather fueled by external pressure. Her actions coincided with intense media backlash over Plaintiff's viral March 2021 tweet—widely misrepresented as racially entitled—and DOJ's broader retaliatory agenda against January 6 defendants *(Ex. BB, Ex. 5, March 2021 email; Ex. CC-6)*. Rochlin was later terminated on January 25, 2025, for misconduct in January 6th prosecutions..

24. These false portrayals were foreseeably amplified in the press, including a November 4, 2021 *Dallas Morning News* article that repeated Rochlin's claim that Plaintiff "chanted 'Hang Mike Pence'" and "promoted and celebrated violence" *(Ex.Y-7, p. 3)*. This narrative destroyed Plaintiff's 20+ year reputation as a real estate broker and influencer and contributed to widespread public vilification. *(Ex. Y-1 through Y-11)*

25. Rochlin's escalation was motivated by improper external pressures, including the viral spread of Plaintiff's "blonde hair, white skin" tweet, which prompted the DOJ's shift from Blake's lenient recommendation *(Ex. B, B-1, Ex. 4, March 2021 email; Ex. CC-6)*. This media-driven prosecution aligned with broader DOJ weaponization against January 6 defendants, as recognized by President Trump's Executive Order 14147, "*Ending the Weaponization of the Federal Government*" *(January 20, 2025) (Ex. U)*. Rochlin's misconduct was further evidenced by her termination from the DOJ, for actions in Plaintiff's case and similar prosecutions.

26. While Rochlin's fabrications appeared in the sentencing memorandum *(Ex. C)* and hearing *(Ex. A)*, they originated in her investigatory tasks *(Ex. CC-1, Oct. 8–Nov. 4, 2021)*, such as video analysis and PSR inquiries, conducted post-plea but pre-sentencing. These fact-finding acts are not 'intimately associated with the judicial phase' and are unprotected by absolute immunity (*Buckley*, 509 U.S. at 273).

### D. Impact on Plaintiff

27. Defendants' misconduct caused catastrophic harm, effectively destroying Plaintiff's life:

    a. **Wrongful Imprisonment**: Plaintiff served 60 days in custody, disproportionate to her misdemeanor and the PSR's probation recommendation *(Ex. A, p. 50:10–15)*. The incarceration, under fabricated claims, caused severe emotional trauma *(Ex. J, 13)* and loss of liberty during a period of intense national scrutiny, recognized as unjust by her presidential pardon *(Ex. R)*.

    b. **Reputational Harm and Career Loss**: Rochlin's false portrayals as a violent rioter *(Ex. C, p. 15, ¶ 2; Ex. C-1)*, unremorseful *(Ex. C, p. 19; Ex. C-1)*, and impudent *(Ex. C, p. 25; Ex. C-1, CC-1 through CC-6)* were amplified by

pervasive media coverage *(Ex. Y-1–Y-10, e.g., Y-7, The Independent, Nov. 25, 2021: "un-remorseful Texas").* These lies proliferated across the internet, permanently destroying Plaintiff's reputation, real estate business, and social media platform, rendering her a public pariah.

    c.    **Pain, Suffering, and Mental Anguish**: Rochlin's exploitation of private texts with Plaintiff's dying mother *(Ex. C, p. 8, fn. 5; Ex. 2)*, manipulation of protected speech *(Ex. C, p. 25; Ex. CC-1 through CC-3)*, and fabricated claims *(Ex. 4, Rochlin email; Ex. C-1, Ex. CC-1 through CC-5)* caused extraordinary humiliation, emotional distress, and alienation from her community.

    d.    **Financial Loss**: Plaintiff incurred over $50,000 in legal fees and hundreds of thousands in lost business income due to incarceration, reputational harm, and client loss *(Ex. J)*. Her financial stability was obliterated, with ongoing economic devastation.

    e.    **Life Destruction**: The cumulative impact—wrongful imprisonment, business collapse, internet defamation, and emotional trauma—has left Plaintiff's life unrecognizable, as validated by her pardon *(Ex. R)* and Rochlin's firing.

28. Rochlin's false portrayals of Plaintiff as a violent, unremorseful rioter *(Ex. C, pp. 9, 15, 17; Ex. CC-1 through CC-6)* were amplified through pervasive media coverage, permanently destroying Plaintiff's reputation. For example, a November 4, 2021, *Dallas Morning News* article *(Ex. Y-7)* repeated Rochlin's fabricated claim that Plaintiff "chanted 'Hang Mike Pence'" and "promoted and celebrated violence," citing her sentencing memorandum verbatim *(Ex. C)*. This article, among others *(Ex. Y-1–Y-11)*, falsely labeled Plaintiff a violent rioter, causing her to lose her real estate business, social media

platform, and client base, with losses exceeding $200,000 in commissions and hundreds

of thousands in future income *(Ex. T)*. The media's portrayal, rooted in Rochlin's

investigatory fabrications *(Ex. CC-1- CC-6)*, rendered Plaintiff a public pariah,

exacerbating her emotional distress *(Ex. J)*.

29. The CBS DFW broadcast *(Ex. EE, Jan. 2021)* exacerbated Plaintiff's reputational harm,

amplifying Rochlin's false portrayals *(Ex. C, CC-1)* through images of her FBI arrest and

comments labeling her a "bad person," "entitled," and deserving of prison. These

comments, echoing Rochlin's "entitled Karen" narrative *(Ex. C, p. 25; Ex. CC-5)*, fueled

a public spectacle that destroyed Plaintiff's 20-year reputation as a real estate broker and

influencer, causing $50 million in business losses *(Ex. J, T)*. The broadcast's rapid

reporting, alongside PayPal's ban *(Ex. BB-3)*, suggests DOJ/FBI/CBS/PayPal collusion,

as detailed in Plaintiff's related PayPal complaint *(Case No. 4:22-CV-559)*, further

prejudicing the court's sentencing decision *(Ex. A-5)*.

30. **Reputational Harm and Career Loss**: Prior to January 6, 2021, Plaintiff maintained a

20+ year reputation as a respected real estate broker and social media influencer in

Dallas, with a thriving business and thousands of followers *(Ex. T, business records)*.

Rochlin's investigatory fabrications *(Ex. CC-1- CC-6)* and false portrayals as a violent

rioter *(Ex. C, pp. 9, 15, 17; Ex. Y-7)* destroyed this reputation, amplified by media

coverage *(Ex. Y-1–Y-10)*. For example, *The Dallas Morning News (Ex. Y-7, Nov. 4, 2021)*

repeated Rochlin's false claim that Plaintiff "chanted 'Hang Mike Pence'" (p. 3), causing

Plaintiff to lose her client base, business, and social media platform, with losses

exceeding $200,000 in commissions and hundreds of thousands in future income *(Ex. T)*.

**E. Judicial Reliance**

31. The court relied on Rochlin's misrepresentations, including false claims of **violent intent** *(Ex. C, p. 9; Ex. A, p. 42:19–43:6)*, **lack of remorse** *(Ex. C, p. 19; Ex. A, p. 47:17–48:2)*, and **impunity** *(Ex. C, p. 25; Ex. A, p. 47:9–11)*, despite Plaintiff's clarifications *(Ex. A, p. 40:17–22; Ex.4, responsibility email)*. The Judge noted media coverage and public interest as general deterrence factors for sentencing of Plaintiff, as directed by Rochlin. *(Ex. A-5)* This reliance led to an excessive sentence, violating due process *(Ex. C-1)*, as later acknowledged by Plaintiff's pardon and Rochlin's termination *(Ex. R)*.

## F. Official Recognition of Misconduct

32. On January 20, 2025, Plaintiff received a presidential pardon for her January 6, 2021, conviction, recognizing the prosecution as a "grave national injustice" *(Ex. R)*. The pardon, issued alongside approximately 1,500 others, aimed to "begin a process of national reconciliation" for politically motivated prosecutions *(Ex. R)*.

33. On or about January 25, 2025, Rochlin was fired from the DOJ for misconduct related to her actions in Plaintiff's case and similar prosecutions, further evidencing her malicious intent and abuse of authority.

34. On January 20, 2025, President Trump issued Executive Order 14147, *"Ending the Weaponization of the Federal Government,"* directing agencies to investigate and remedy politically motivated prosecutions, including those targeting January 6 defendants like Plaintiff *(Ex. U)*. The order cites the DOJ's "unprecedented, third-world weaponization of prosecutorial power" against political opponents, directly supporting Plaintiff's claims of malicious prosecution and retaliation.

## LEGAL CLAIMS

**Claim 1: Malicious Prosecution (Bivens – Rochlin)**

35. Rochlin violated Plaintiff's Fourth Amendment rights by maliciously prosecuting her without probable cause (*Thompson v. Clark*, 142 S. Ct. 1332 (2022)).

   a. **Lack of Probable Cause**: Rochlin fabricated evidence, e.g., "Hang Mike Pence" *(Ex. C, p. 9; Ex. A, p. 17:5–12; Ex.t C-1)*, pepper spray *(Ex. C, p. 17; Ex. CC-1 to CC-3)*, and video timeline fabrication *(Ex. 4, Rochlin email; Ex. CC-1 to CC-3)*, contradicting Plaintiff's non-violent plea *(Ex. I)*. Her misconduct led to her termination.

   b. **Malice**: Rochlin's actions, including DOJ-influenced shift *(Ex. 4, March 2021)* and media-driven prosecution *(Ex. CC-6; Ex. C-1)*, show malice.

   c. **Harm**: Plaintiff suffered 60 days' imprisonment, reputational harm, business loss, and emotional distress *(Ex. T, J, Y-1–Y-10)*, recognized as unjust by her pardon.

   d. **No Immunity**: Rochlin's investigatory fabrication *(Ex. 4, Rochlin email; Ex. CC-1)* is unprotected by absolute immunity (*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)) and violates clearly established law, defeating qualified immunity (*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

36. Rochlin's last-minute escalation to a 60-day sentence, overriding AUSA Blake's 30-day home confinement and the PSR's probation recommendation *(Ex. 4, Oct. 5, 2021)*, lacked probable cause due to her investigatory fabrications, such as the false timeline *(Ex. CC-1)*. These actions, conducted outside advocative functions, constituted an unreasonable seizure under the Fourth Amendment (*Thompson v. Clark*, 142 S. Ct. 1332 (2022)) and are not protected by absolute immunity (*Buckley*, 509 U.S. at 273). Rochlin's malice, driven by media pressures *(Ex. CC-6, Ex. Y to Y-11)* and confirmed by her

termination, caused Plaintiff's 60-day imprisonment, reputational harm, and financial loss *(Ex. J, T)*.

37. Rochlin's investigatory fabrications *(Ex. CC-1; Ex. Y-7, p. 3)* and escalation to a 60-day sentence, overriding Blake's 30-day recommendation *(Ex. 4-1)* and the PSR's probation *(Ex. T-1)*, lacked probable cause, constituting an unreasonable seizure (*Thompson v. Clark*, 142 S. Ct. 1332 (2022)).

38. Plaintiff's coerced plea due to factors relative to the weaponization of the federal government *(Ex. U)*, negates collateral estoppel, as it was involuntary (*Tollett v. Henderson*, 411 U.S. 258 (1973))."

39. Rochlin's failure to disclose evidence, including tweet metadata Plaintiff does not recall *(Ex. C)*, indicates deliberate fabrication to support a baseless prosecution.

40. By labeling Plaintiff as a DVE under the March 8, 2021, guidelines (Ex. DD), Rochlin fabricated evidence (Ex. C, p. 9; Ex. CC-1) to justify a 60-day sentence, despite no evidence of violence, undermining probable cause and reflecting DOJ's crackdown on January 6th defendants.

41. Exhibit BB-1.1 confirms DOJ's DVE campaign drove Rochlin's escalation *(Ex. DD, U)*. Exhibit EE shows FBI/CBS/PayPal collusion *(Ex. BB-3, BB-4, BB-6, Y-7)*, amplifying fabrications, lacking probable cause.

42. The FBI raid, to be addressed in a separate claim *(Ex. BB-5)* lacked probable cause , initiating a malicious prosecution continued by Rochlin's fabrications *(Ex. C, CC-1)*.

**Claim 2: First Amendment Retaliation (Bivens – Rochlin)**

43. Rochlin violated Plaintiff's First Amendment rights by retaliating against her protected

    speech (*Hartman v. Moore*, 547 U.S. 250 (2006); *Nieves v. Bartlett*, 139 S. Ct. 1715

    (2019)).

    a. **Protected Speech**: Plaintiff's "prelude to war," "best day" tweet and *(Ex. C, Ex.

       CC-6)* were protected political expressions (*Brandenburg v. Ohio*, 395 U.S. 444

       (1969)) and her "blonde hair" tweet was a response to being attacked online and

       misconstrued in the media. *(Ex. AA)*.

    b. **Retaliation**: Rochlin punished these statements as evidence of violent intent or

       impunity, escalating prosecution after the "blonde hair" tweet went viral *(Ex. 4,

       March 2021 email; Ex. CC-5, Ex. AA)*, as part of DOJ's weaponization *(Ex. U)*.

    c. **Harm**: Plaintiff suffered chilled speech, imprisonment, reputational harm, and

       business loss *(Ex. T, J, Y-1–Y-11)*.

    d. **No Immunity**: Rochlin's investigatory speech analysis *(Ex. 4, Rochlin email; Ex.

       CC-1)* is unprotected by absolute immunity (*Buckley*) and violates clearly

       established law (*Hartman*), defeating qualified immunity (*Harlow*).

44. Rochlin's last-minute analysis of Plaintiff's protected speech, including private texts and

    social media *(Ex. C, Sentencing Memo, p. 16),* retaliated against her First Amendment

    rights by escalating the sentence from probation to 60 days (*Hartman v. Moore*, 547 U.S.

    250 (2006)). Alternatively, Plaintiff pleads this as a Fourth Amendment violation

    (unreasonable seizure for speech).

45. By withholding evidence like tweet metadata, Rochlin prevented Plaintiff from defending

    her protected speech, escalating charges to punish her public profile.

46. The guidelines' broad DVE definition *(Ex. DD)* enabled Rochlin to mischaracterize Plaintiff's protected speech *(Ex. C, p. 25; Ex. CC-5)* as extremist, secretly labeling her a threat and retaliating with a harsher sentence, chilling her First Amendment rights.

47. Exhibit BB-1.1 shows that the DOJ mischaracterized Plaintiff's speech as DVE activity *(Ex. C, CC-5)* and Exhibit EE's comments vilified Plaintiff's speech *(Ex. BB-3)*, supporting retaliation.

48. The FBI raid, to be addressed in a separate claim *(Ex. BB-5)* where the FBI seized Plaintiff's MAGA hat indicates first amendment retaliation as seen in Rochlin's sentencing memo and aggravating sentencing factors *(Ex. C, CC-1)*.

**Claim 3: Due Process Violations (Bivens – Rochlin)**

49. Rochlin violated Plaintiff's Fifth Amendment due process rights by fabricating evidence and suppressing exculpatory evidence (*Napue v. Illinois*, 360 U.S. 264 (1959); *Brady v. Maryland*, 373 U.S. 83 (1963); *Gardner v. Florida*, 430 U.S. 349 (1977)).

   a. **Fabrication**: Rochlin misrepresented videos *(Ex. 4, Rochlin email; Ex.C-1)*, claimed "Hang Mike Pence" *(Ex. C, p. 9; Ex. CC-1 through CC-3)*, and alleged deceit *(Ex. C, p. 19)* without evidence *(Ex. C, p. 19, Ex. CC-3)*.

   b. **Suppression**: Rochlin suppressed Plaintiff's cooperation *(Ex.3, March 2021; Ex. 4, Feb. 19, 2021, Ex. 7)*, remorse *(Ex. 3, PSR statement; Ex. A, p. 40:17–22)*, and police facilitation of crowd involvement *(Ex. 2, Capitol Police removing barricades)*.

   c. **Harm**: These violations prejudiced the court, leading to a 60-day sentence, reputational harm, and emotional distress *(Ex. T, J, Y-1–10, Ex. 8)*.

d. **No Immunity**: Rochlin's investigatory suppression *(Ex. 4, Rochlin email; Ex. CC-1)* is unprotected by absolute immunity (*Buckley*) and violates clearly established law (*Napue*, *Brady*), defeating qualified immunity (*Harlow*).

50. Rochlin's investigatory misconduct, including fabricating a timeline *(Ex.CC-1, Nov. 4, 2021)* and misrepresenting Plaintiff's cooperation in PSR inquiries *(Ex. CC-1, Oct. 8, 2021; Ex. 3),* prejudiced the court to impose a 60-day sentence, ignoring the PSR's probation recommendation *(Ex. A-1)*. This violated Plaintiff's Fifth Amendment due process rights by denying a fair sentencing hearing (*Napue v. Illinois*, 360 U.S. 264 (1959); *Brady v. Maryland*, 373 U.S. 83 (1963)). These non-advocative acts are unprotected by absolute immunity (*Buckley*, 509 U.S. at 273), causing imprisonment and emotional distress *(Ex. J, T)*.

51. Rochlin's fabrications *(Ex. CC-1-3; Ex. Y-7)* and suppression of cooperation *(Ex. 3)* prejudiced the court to impose a 60-day sentence, ignoring the PSR*,* violating due process (*Napue v. Illinois*, 360 U.S. 264 (1959)). The coerced plea *(Ex. 2)* does not bar sentencing claims.

52. Rochlin further violated Plaintiff's due process rights by failing to disclose evidence used in the Sentencing Memorandum *(Ex. C)*, including metadata for a tweet Plaintiff does not recall seeing, denying Plaintiff the opportunity to review or rebut it, in violation of *Brady v. Maryland* (373 U.S. 83, 1963) and *Napue v. Illinois* (360 U.S. 264, 1959).

53. Exhibit BB-1.1's DVE focus led Rochlin to suppress exculpatory evidence *(Ex. CC-1)*. Exhibit EE's broadcast prejudiced sentencing *(Ex. A-5)*, violating *Brady* and *Napue*.

54. The FBI raid, to be addressed in a separate claim *(Ex. BB-5)* lacked due process, initiating a malicious prosecution continued by Rochlin's fabrications *(Ex. C, CC-1)*.

**Claim 4: Malicious Prosecution (FTCA – DOJ)**

55. The DOJ, through Rochlin and others, maliciously prosecuted Plaintiff under Texas law (*Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515 (Tex. 1997)).

    a. **Lack of Probable Cause**: Rochlin's fabrications *(Ex. C, p. 9; Ex. 4, Rochlin email; Ex. CC-1-CC3)* and DOJ's influence on Blake's Pretrial Diversion reversal *(Ex. 4, March 2021)* lacked probable cause for a 60-day sentence.

    b. **Malice**: DOJ's media-driven shift *(Ex. 4, "blonde hair" tweet email; Ex. CC-6)* and Rochlin's takeover *(Ex. 4, Oct. 5, 2021)* show malice.

    c. **Harm**: Plaintiff suffered imprisonment, financial loss, reputational harm, and emotional distress *(Ex. T, J, Y)*.

    d. **FTCA Liability**: Rochlin's actions were within her DOJ employment scope *(28 U.S.C. § 2671)*.

56. Rochlin's investigatory fabrications *(Ex. CC-1, Nov. 4, 2021)* and last-minute escalation to a 60-day sentence, overriding Blake's and the PSR's recommendations *(Ex. 4)*, lacked probable cause under Texas law (*Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515 (Tex. 1997)). Her actions, within DOJ's scope of employment and driven by malice *(Ex. CC-6)*, caused Plaintiff's imprisonment and financial ruin and life-long prison stigma *(Ex. J, T)*.

57. Rochlin's escalation and fabrications *(Ex. CC-1 to CC-6; Ex. Y-7)* lacked probable cause under Texas law, amplified by media harm *(Ex. Y-7; Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515 (Tex. 1997)). The claim is timely, accruing on January 20, 2025 *(Ex. U)*."

58. Exhibit BB-1.1 supports DOJ's malicious intent, with Ex. EE showing DOJ/FBI/CBS/PayPal collusion *(Ex. BB-3, Y-7)*, causing harm.

## Claim 5: Defamation and False Light (FTCA – DOJ)

59. Plaintiff Jennifer L. Ryan brings this claim under the Federal Tort Claims Act (FTCA) against the United States, alleging that Assistant U.S. Attorney Karen Rochlin—acting within the scope of her DOJ employment—defamed Plaintiff and placed her in a false light under Texas law (*Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex. 1994)). A CBS DFW broadcast *(Ex. B-6, Jan. 2021)* amplified Rochlin's false claims *(Ex. C, p. 9; Ex. CC-1–CC-3)*, reporting Plaintiff's arrest and PayPal ban with images and 30 pages of comments labeling her "entitled" and deserving of prison, fueled by the DOJ's DVE narrative *(Ex. BB-1.1, Dec. 13, 2021)*. These misrepresentations made by Rochlin, echoed in the media *(Ex. Y-7, Dallas Morning News, Nov. 4, 2021)*, destroyed Plaintiff's reputation, causing $200,000 in lost commissions and millions in future income (Ex. T).

60. Rochlin's investigatory fabrications *(Ex. CC-1)* and DOJ's coordinated actions with financial institutions *(Ex. BB-3)* and media *(Ex. BB-4, BB-6, Y-7),* as detailed in Plaintiff's related PayPal complaint (Case No. 4:22-CV-559), constitute false light, actionable under the FTCA's law enforcement proviso (*Millbrook v. United States*, 569 U.S. 50 (7) (2013)). Plaintiff's administrative claim *(Ex. Z)* is timely, accruing on January 20, 2025 (Ex. U; *United States v. Kubrick*, 444 U.S. 111 (1979)).

### A. False and Defamatory Statements

61. In the course of rushed investigatory tasks and her sentencing advocacy, Rochlin knowingly or recklessly made false statements portraying Plaintiff as a violent, unremorseful Capitol rioter—contrary to all evidence showing Plaintiff's conduct was non-violent, brief (2 minutes and 8 seconds inside the Capitol), and marked by early cooperation and remorse *(Ex. I and 3)*. Among the defamatory fabrications:

a. **Chanting "Hang Mike Pence":** Rochlin falsely claimed Plaintiff joined this chant *(Ex. A-3, Ex. C, p. 9; Ex. CC-1 to CC-3,)*, though no such audio or visual evidence exists *(Ex. A-2, - **Judge states, "I don't see it in the video," Rochlin admits there is no evidence of Plaintiff making such chant.)***

b. **Mischaracterizing a Livestream:** Rochlin distorted Plaintiff's 7:00 a.m. livestream to suggest she was marching toward the Capitol with intent to riot *(Ex. C, p. 6; Ex. CC-1 to CC-3)*, despite contradictory footage and contemporaneous emails.

c. **False Allegation of Pepper Spray:** Rochlin alleged Plaintiff was "sprayed" with chemical irritant *(Ex. C, p. 17; Ex. C-1, CC-1 to CC-3)*, unsupported by any evidence.

d. **Psychological Profiling via Protected Speech:** Rochlin cherry-picked Plaintiff's private texts and social media posts to frame her as a fame-seeking extremist and future threat *(Ex. C, p. 16; Ex. C-1)*, violating constitutional protections .

62. These fabrications were developed after Rochlin's abrupt assignment on October 5, 2021, overriding prior diversion recommendations by AUSA Frances Blake *(Ex. 4)*, and ignoring the PSR's recommendation of 24-months probation *(Ex. A, p. 50:10–15)*.

63. Exhibit B-6's broadcast and comments amplified Rochlin's false claims *(Ex. Y-7, CC-1)*, fueled by Exhibit BB-1.1's DVE narrative, supporting false light.

**B. Publication and Media Amplification**

64. Rochlin's falsehoods, published in the sentencing memorandum *(Ex. C, Ex. A-3) a*nd reinforced at the hearing *(Ex. A, pp. 10–11)*, were foreseeably echoed by the press. A **November 4, 2021 article in the *Dallas Morning News* *(Ex. Y-7)*** repeated her claims

verbatim—stating Plaintiff "chanted 'Hang Mike Pence'" and "celebrated

violence"—irreparably damaging Plaintiff's 20-year reputation as a respected Dallas real

estate broker and influencer. Similar distortions were republished in over ten media

outlets *(Ex. Y-1–Y-11)*, rendering Plaintiff a public pariah.

### C. Falsity and Malice

65. The claims were demonstrably false:

    a.  Plaintiff's **guilty plea** *(Ex. I)* admitted only to a non-violent misdemeanor.

    b.  Her **cooperation** was extensive—she surrendered devices, passwords, and

       complied with investigators *(Ex. 3-10)*.

    c.  Her **remorse** was documented in interviews and at sentencing *(Ex. A, p. 40)*.

    d.  **Capitol footage** disproves Rochlin's narrative.

66. Rochlin acted with actual malice or reckless disregard, motivated by media pressure *(Ex.
4, March 2021 email re: Plaintiff's viral tweet; Ex. CC-6)* and a political agenda later
exposed via Executive Order 14147. Her termination for misconduct in this case, further
evidences her ill intent.

67. The FBI raid, to be addressed in a separate claim *(Ex. BB-5)* lacked probable cause ,
initiating a malicious prosecution continued by Rochlin's fabrications *(Ex. C, CC-1)*.

## D. Damages

68. As a direct result of Rochlin's defamatory campaign:

    a.  Plaintiff lost her business, commissions exceeding $200,000, and future income in

       the millions *(Ex. T)*.

    b.  Her public image was destroyed, and she was subjected to widespread vilification.

     c. She incurs over $10,000 in therapy costs for emotional distress *(Ex. J),* worsened by the misuse of her private communications *(Ex. C, Sentencing Memo, p. 16).*

## E. FTCA Liability

69. Rochlin's conduct—while arguably protected when made in court filings—is actionable under the FTCA's "law enforcement proviso" *(28 U.S.C. § 2680(h))* and *Millbrook v. United States*, 569 U.S. 50 (2013), where investigatory conduct by law enforcement officers creates liability. Plaintiff asserts:

     a. Rochlin's **investigatory misrepresentations** *(Ex. CC-1)* fall outside the libel/slander exception and qualify for false light claims under Texas law.

     b. Plaintiff filed an administrative claim with the DOJ on [insert date], which remains unresolved *(Ex. Z)*. She requests a stay under *28 U.S.C. § 2675(a)* if needed.

     c. In the alternative, the FTCA limitations period began on January 20, 2025, when Plaintiff discovered the DOJ's political weaponization via Executive Order 14147 *(Ex. U)*, making this claim timely under *United States v. Kubrick*, 444 U.S. 111 (1979).

     d. False light, distinct from defamation, applies here due to the DOJ's public misrepresentation of Plaintiff's character in both government documents and media channels (*Cain*, supra).

## Claim 6: Intentional Infliction of Emotional Distress (FTCA – DOJ)

70. The DOJ, through Rochlin, intentionally inflicted emotional distress under Texas law (<u>*Twyman v. Twyman*</u>, 855 S.W.2d 619 (Tex. 1993)).

    a. **Extreme Conduct**: Rochlin's fabrication *(Ex. 4, Rochlin email; Ex. CC-1 to CC-5, Issue 6.1),* misuse of private texts with Plaintiff's dying mother *(Ex. C, p. 8, fn. 5; Ex. C-1)*, and media-driven prosecution *(Ex. CC-6)* were outrageous.

    b. **Intent**: Rochlin's actions were intentional, targeting Plaintiff's public persona *(Ex. C, p. 16; Ex. A, p. 19:5–20:5; Ex. 4, "blonde hair" tweet email)*.

    c. **Harm**: Plaintiff suffered severe distress, exacerbated by her mother's death and fear of prison *(Ex. 2, J).*

    d. **FTCA Liability**: Rochlin's actions were within her DOJ employment scope.

71. Rochlin's last-minute misconduct, including fabricating evidence *(Ex. CC-1, Nov. 4, 2021)* and misusing private texts *(Ex. C, Sentencing Memo, p. 16),* was extreme and outrageous, intentionally escalating the sentence from probation to 60 days. This caused severe emotional distress, exacerbated by media vilification and life long prison stigma. *(Ex. J, Y-1–Y-10; Twyman v. Twyman, 855 S.W.2d 619 (Tex. 1993)).*

72. Rochlin's investigatory fabrications *(Ex. CC-1; Ex. Y-7, Ex. 1 email to probation)* and sentencing escalation, destroying Plaintiff's 20+ year reputation, were extreme and outrageous, causing severe distress *(Ex. J; Twyman v. Twyman, 855 S.W.2d 619 (Tex. 1993)).*

73. Rochlin's use of undisclosed metadata targeted Plaintiff's public profile, unlike other J6 defendants *(Ex.CC-6)*, showing discriminatory intent.

74. Exhibit B-6's vilifying comments, tied to Exhibit BB-1.1's DVE framing, caused severe distress *(Ex. J, BB-3, Y-7).*

**DAMAGES**

75. As a direct and proximate result of Defendants' unconstitutional and tortious conduct, Plaintiff Jennifer L. Ryan suffered extensive damages, including but not limited to:

    a.  **Compensatory Damages – Requested: $15,000,000**

        i.  **Wrongful Imprisonment and Physical/Emotional Distress – $5,000,000**: Plaintiff was wrongfully incarcerated for 60 days in federal custody under fabricated and prejudicial prosecutorial claims . She experienced emotional trauma, loss of liberty, and lasting psychological harm, exacerbated by confinement during a time of high national scrutiny and political hostility, as recognized by her presidential pardon.

        ii.  **Reputational Harm and Career Loss – $5,000,000**: Defendants' defamatory narrative, amplified through national and international media *(Ex. Y-1–Y-11, e.g., Y-7, The Independent, Nov. 25, 2021),* destroyed Plaintiff's reputation and obliterated her real estate business and social media platform. The stigma persists, causing irreparable personal and professional injury, rendering Plaintiff a public pariah, as validated by Rochlin's firing.

        iii.  **Pain, Suffering, and Mental Anguish – $3,000,000**: Defendants' exploitation of private communications with Plaintiff's dying mother, manipulation of protected speech, and fabricated claims caused extraordinary humiliation, emotional distress, and alienation from her community.

iv. **Legal and Financial Costs – $2,000,000**: Plaintiff incurred over $50,000 in legal fees and hundreds of thousands of dollars in lost business income due to client loss, reputational harm, and incarceration. Her financial stability was significantly compromised, with ongoing economic devastation.

b. **Punitive Damages – Requested: $60,000,000** Plaintiff seeks punitive damages against Defendant Rochlin in her individual capacity for egregious, malicious, and constitutionally offensive acts committed under color of federal law. These actions include fabricating evidence, misrepresenting protected speech, manipulating judicial perception, and orchestrating a politically motivated prosecution. Rochlin's misconduct led to her termination, and President Trump's Executive Order identified such actions as weaponization of the DOJ *(Ex. U)*. Punitive damages are warranted to punish this intentional misconduct and deter future abuses of prosecutorial discretion against American citizens exercising their First and Fifth Amendment rights (*Smith v. Wade*, 461 U.S. 30 (1983))

## REQUEST FOR RELIEF

76. Plaintiff respectfully requests:

a. **Compensatory Damages**: $15,000,000 for wrongful imprisonment and physical/emotional distress ($5,000,000), reputational harm and career loss ($5,000,000), pain, suffering, and mental anguish ($3,000,000), and legal and financial costs ($2,000,000), as detailed in the Damages section.

b. **Punitive Damages**: $60,000,000 against Defendant Rochlin in her individual capacity for egregious, malicious, and constitutionally offensive misconduct, to punish and deter future abuses.

c. **Declaratory Relief**: A declaration that Defendants' actions violated Plaintiff's First, Fourth, and Fifth Amendment rights and constituted tortious conduct under Texas law.

d. **Discovery**: Production of Rochlin's notes, DOJ communications, Blake's communications, and J6 sentencing records (e.g., *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164) to substantiate misconduct.

e. **Costs and Fees**: All allowable costs and attorney fees (if later retained).

f. In the alternative, Plaintiff requests leave to amend to cure any deficiencies, pursuant to Fed. R. Civ. P. 15(a)(2).

g. Plaintiff requests a stay of proceedings pending resolution of the DOJ administrative claim filed on May 5, 2025 *(Ex. Z)*, pursuant to *28 U.S.C. § 2675(a)*, to ensure FTCA compliance. In the alternative, Plaintiff requests leave to amend to cure any deficiencies, pursuant to Fed. R. Civ. P. 15(a)(2)."

h. **Other Relief**: Any further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**VERIFICATION**

I, Jennifer L. Ryan, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: May 29, 2025

/s/ Jennifer L. Ryan
_____

Jennifer L. Ryan
[Address Redacted]
Richardson, TX 75081
[Phone Redacted]
[Email Redacted]

---

**CERTIFICATE OF SERVICE**

I certify that on May 29, 2025, I served this First Amended Complaint and attached exhibits on Defendants United States Department of Justice and Karen E. Rochlin via email to: Lisa R. Hasday, Assistant United States Attorney, 1100 Commerce Street, Third Floor, Dallas, Texas 75242-1699. Lisa.Hasday@usdoj.gov

/s/ Jennifer L. Ryan