IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JENNIFER L. RYAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:25-cv-00325-X-BT |
| | § | |
| UNITED STATES DEPARTMENT OF | § | |
| JUSTICE et al., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are separate motions to dismiss filed by Defendants the United States Department of Justice (DOJ) (ECF No. 27) and former Assistant United States Attorney (AUSA) Karen E. Rochlin (ECF No. 26). Also before the Court is Plaintiff Jennifer L. Ryan's First Motion for Leave to File Second Amended Complaint (ECF No. 31). As explained below, the District Judge should **GRANT** Defendants' Motions, **DISMISS** all of Plaintiff's claims without prejudice, and **DENY** Plaintiff leave to amend her pleadings.

## Background

Plaintiff, proceeding pro se, filed this civil action against the DOJ and former AUSA Rochlin for alleged prosecutorial misconduct in *United States v. Jennifer Leigh Ryan*, Case No. 1:21-cr-00050-CRC (D.D.C.)—a criminal action in the United States District Court for the District of Columbia arising out of events at the U.S. Capitol on January 6, 2021. *See generally* Am. Compl. (ECF No. 20-1).

1

Plaintiff pleaded guilty in the underlying criminal case to a misdemeanor charge of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G), and served a 60-day prison sentence. *Id.* ¶ 6 (PageID 154–55).[1] In 2025, Plaintiff received a Presidential Pardon, and Rochlin was fired from the DOJ. *Id.* ¶ 7 (PageID 155).

In her live pleading,[2] Plaintiff claims Rochlin engaged in prosecutorial misconduct to obtain a custodial sentence. *See id.* ¶¶ 15, 19. Plaintiff asserts that the first prosecutor assigned to her case suggested probation as a possible sentence, but Rochlin took over the case after Plaintiff pleaded guilty and pursued a custodial sentence based on fabricated evidence, misrepresentations of Plaintiff's character, and minimization of Plaintiff's cooperation. *See id.* ¶¶ 16–19. Plaintiff alleges that Rochlin's efforts to secure a custodial sentence constitute investigatory tasks that fall outside a prosecutor's role as an advocate and thus are not protected by prosecutorial immunity. *See id.* ¶ 22, 30, 35–37, 43, 49, 50. She also avers that Rochlin's conduct was part of the DOJ's retaliatory agenda against Plaintiff and other criminal defendants who were charged in connection with events at the U.S.

---

[1] Plaintiff's complaint contains a preliminary statement and introduction with paragraphs numbering 1–9. Following those sections, however, the paragraph numbering starts over at "1" and continues for the rest of the complaint. To avoid confusion, when the FCR cites a paragraph from the preliminary statement or introduction, it also includes the PageID number imprinted on the ECF file stamp at the top right of each page. Otherwise, the FCR uses the paragraph numbering that begins on page 5.

[2] With leave of court, Plaintiff filed her Amended Complaint (ECF No. 20-1), which is the live pleading.

Capitol on January 6, 2021. *See id.* ¶ 23. Plaintiff states that Defendants' actions caused her emotional anguish and damaged her reputation and career prospects. *See id.* ¶¶ 27, 72, 75, 76.

Based on these allegations, Plaintiff asserts *Bivens* claims against Rochlin for malicious prosecution, First Amendment retaliation, and violation of her Fifth Amendment due process rights. *See id.* ¶ 8 (PageID 155). She also asserts claims against the DOJ under the Federal Tort Claims Act (FTCA) for malicious prosecution, defamation and false light, and intentional infliction of emotional distress. *See id.* Plaintiff seeks $75,000,000 in compensatory and punitive damages, declaratory relief, court costs, and fees. *See id.* ¶ 76.

Rochlin and the DOJ filed separate motions to dismiss all of Plaintiff's claims. *See* ECF Nos. 26, 27.

The DOJ argues that Plaintiff's FTCA claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because the Court lacks subject matter jurisdiction over those claims where (1) Plaintiff failed to sue the proper defendant; (2) Plaintiff did not exhaust her administrative remedies; and (3) the FTCA's discretionary-function exception and intentional-tort exception bar her claims. *See* DOJ Mot. 4–11 (ECF No. 27).[3] The DOJ further argues that Plaintiff's claims for malicious prosecution and intentional infliction of emotional distress are

---

[3] When citing to Defendants' Motions to Dismiss (ECF Nos. 26, 27), the FCR uses the bolded page numbers at the bottom of each page.

subject to dismissal under Rule 12(b)(6) for failure to state a claim. *See id.* at 13–25.

Rochlin argues that Plaintiff's claims against her should be dismissed under Federal Rule of Civil Procedure 12(b)(2) because the Court lacks personal jurisdiction over Rochlin. *See* Rochlin Mot. 5–8 (ECF No. 26). Rochlin also argues that Plaintiff's claims against her should be dismissed under Rule 12(b)(6) because (1) Rochlin is entitled to absolute prosecutorial immunity; (2) Plaintiff's claims present a "new context" for *Bivens* and that "special factors" preclude extending *Bivens* liability here; and (3) to the extent Rochlin is not entitled to absolute immunity and a *Bivens* remedy is available, Rochlin is entitled to qualified immunity. *See id.* at 9–40.

Defendants' motions are fully briefed, and Plaintiff has moved for leave to file a second amended complaint. *See* Mot. Leave (ECF No. 30).

## Legal Standards

### I.  Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The Fifth Circuit recognizes a distinction between a "facial attack" and a "factual attack" upon a complaint's subject matter jurisdiction. *Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878–79 (N.D. Tex. 1998), *aff'd,* 199 F.3d

4

279 (5th Cir. 2000). "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Id.* at 878 (citation omitted). If the defendant supports the motion with evidence, however, then the attack is "factual," and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (quoting *Mortensen v. First Fed. Sav. And Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Regardless of the attack, "[t]he plaintiff constantly bears the burden of proof that jurisdiction does exist." *Rodriguez*, 992 F. Supp. at 879 ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.") (citations omitted).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

## II. Personal Jurisdiction and Rule 12(b)(2)

*In personam*, or "personal jurisdiction," refers to a court's power over a defendant's personal rights and provides the authority necessary to issue decrees that bind a specific defendant. *See* Jurisdiction, Black's Law Dictionary (12th ed.

2024); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). For a federal court to hear a case, it must have personal jurisdiction over the defendant. *See, e.g.*, *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (recognizing that a court must have "power over the parties before it (personal jurisdiction) before it can resolve a case"); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999) ("Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication.")."Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (Thomas, J.) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 124–25 (2014)). This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *See id.* (quoting Fed. Rule Civ. P. 4(k)(1)(A)). Put differently, the Court can only exercise personal jurisdiction if a Texas state court could do so. *See id.*; *see also Point Landing, Inc. v. Omni Cap. Int'l, Ltd.*, 795 F.2d 415, 419 (5th Cir.1986), *aff'd sub nom., Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97 (1987).

Texas state courts may exercise jurisdiction if: (1) the Texas long-arm statute confers personal jurisdiction; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the U.S. Constitution. *See, e.g.*, *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006). Because the Texas long-arm statute authorizes the exercise of personal jurisdiction to the full

extent allowed by the Due Process Clause of the Fourteenth Amendment, the Court need only determine whether exercising jurisdiction over Rochlin complies with federal due process. *See, e.g.*, *Aviles v. Kunkle*, 978 F.2d 201, 203–04 (5th Cir. 1992). Thus, the usual two-step inquiry "collapses into one federal due process analysis." *See Sangha v. Navig8 ShipManagement Private, Ltd.*, 882 F.3d 96, 101 (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).

The Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden*, 571 U.S. at 283. Physical presence in Texas is not required, but a nonresident generally must have certain "minimum contacts" with Texas "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See id.* (citation modified) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A nonresident's contacts with the forum may be sufficient "minimum contacts" to assert either general or specific personal jurisdiction—this case implicates only the latter.[4] *See Seiferth*, 472 F.3d at 271.

---

[4] "'Specific' or 'case-linked' jurisdiction 'depends on an affiliation between the forum and the underlying controversy'" (*i.e.,* an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation"). *Walden*, 571 U.S. at 283 n.6 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915 (2011). "This is in contrast to 'general' or 'all purpose' jurisdiction, which permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.,* domicile)." *Id.* Plaintiff does not suggest that Rochlin is domiciled in Texas but only that Rochlin "targeted harmful conduct at the forum," and thus relies on specific jurisdiction only. *See* Resp. 2 (ECF No. 32).

In determining whether there are sufficient "minimum contacts" necessary to assert specific personal jurisdiction over a nonresident defendant, the Court "focuses on the *relationship* among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284 (citation modified) (emphasis added) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984). Only when a defendant's "suit-related conduct" creates a "substantial connection with the forum state," is such relationship sufficient to exercise jurisdiction consistent with due process. *Id*. Two "related aspects" of this necessary relationship are relevant here. *See id*.

First, this relationship "must arise out of contacts that the 'defendant *himself*' creates with the forum State" because "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id*. (quoting *Burger King Corp.*, 471 U.S. at 475 and citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–292 (1980)). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id*. Put simply, a plaintiff's contacts with a forum, however significant, "cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id*. (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

Second, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside

there." *Id.* "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.*

Where, as here, a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and no evidentiary hearing is held, "[t]he plaintiff bears the burden of establishing jurisdiction but is required to present only *prima facie* evidence." *Seiferth*, 472 F.3d at 270. "In determining whether a *prima facie* case exists," courts "must accept as true the plaintiff's uncontroverted allegations and resolve in [the plaintiff's] favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other documentation." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219–20 (5th Cir. 2012) (citation modified) (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) ("The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."). But the Court need not "credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

**Analysis**

I.    <u>The DOJ's Motion to Dismiss</u>

Plaintiff asserts three claims against the DOJ—all tort claims under the Federal Tort Claims Act (FTCA),  28 U.S.C. §§ 1346(b), 2671–2680. The DOJ argues, among other things, that the Court lacks subject matter jurisdiction over

Plaintiff's FTCA claims because Plaintiff failed to sue the proper defendant and because Plaintiff has failed to exhaust her administrative remedies. DOJ Mot. 4–6 (ECF No. 27). These arguments present a facial attack on the Court's subject matter jurisdiction. *See Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981) (noting that a facial attack challenges sufficiency of the complaint). Thus, all of Plaintiff's factual allegations will be accepted as true for the purpose of determining whether the Court has jurisdiction over her claims. *Id.*

"In the FTCA, Congress waived the United States' sovereign immunity for claims arising from torts committed by federal employees." *Ali v. Fed. Bureau of Prisons,* 552 U.S. 214, 217–18 (2008) (citing 28 U.S.C. §§ 1346(b)(1)). But the FTCA does not authorize a lawsuit against a federal agency, directly. *See* 28 U.S.C. § 2679(a); *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988) ("It is beyond dispute that the United States, and not the responsible agency . . . is the proper party defendant in a [FTCA] suit."). "Thus, an FTCA claim against a federal agency . . . as opposed to the United States itself must be dismissed for want of jurisdiction." *Id.* (citing *Gregory v. Mitchell*, 634 F.2d 199, 204–05 (5th Cir. 1981). Because Plaintiff asserts her FTCA claims against the DOJ—a federal agency—rather than the United States itself, Plaintiff's claims must be dismissed for want of jurisdiction. *See, e.g.*, *King v. United States Postal Serv. Agency*, No. 3:24-CV-00492-S-BT, 2025 WL 607875, at *3–4 (N.D. Tex. Jan. 14, 2025) (Rutherford, J.), *rec. adopted*, 2025 WL 607062 (N.D. Tex. Feb. 25, 2025) (Scholer, J.), *aff'd*, 2025 WL 2683994 (5th Cir. Sept. 19, 2025); *see also Baze v.*

10

*Texas Att'y Gen. Child Support Div.*, No. 3:23-CV-112-X-BK, 2023 WL 2602770, at \*3 (N.D. Tex. Feb. 13, 2023), *rec. adopted,* 2023 WL 2604811 (N.D. Tex. Mar. 22, 2023) (Starr, J.).

Additionally, subject matter jurisdiction over an FTCA claim "is conditioned on compliance with 28 U.S.C. § 2675(a), which declares that 'an action shall not be instituted' unless the plaintiff has filed an administrative claim and either obtained a written denial or waited six months." *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995) (quoting 28 U.S.C. § 2675(a)). Until those procedures are followed (*i.e.*, administrative remedies are exhausted), "no court has jurisdiction to hear the claim." *Taylor v. Fed. Home Loan Bank Bd.*, 661 F. Supp. 1341, 1350 (N.D. Tex. 1986) (Fish, J.). Relevant here, the failure to completely exhaust administrative remedies *prior to* filing a suit under the FTCA is a jurisdictional defect that cannot be cured by administrative exhaustion *after* suit is filed. *See McNeil v. United States*, 508 U.S. 106, 112–13 (1993) (emphasis added). Stated differently, "[a]n action that is filed before the expiration of the [written denial/waiting period], and is thus untimely, cannot become timely by the passage of time after the complaint is filed." *See Price*, 69 F.3d at 54 (also noting that "[t]his requirement is jurisdictional, and may not be waived.").

In the Amended Complaint, Plaintiff alleges that she filed an administrative claim with the DOJ on May 5, 2025, "which remains pending" and she requests a stay of the action until her FTCA claim ripens. *See* Am. Compl. ¶¶ 2, 69, 76 (ECF No. 20-1). But Plaintiff filed this lawsuit on February 10, 2025, several months

11

before submitting that administrative claim. *See* Original Compl., Feb. 10, 2025 (ECF No. 3). Plaintiff's failure to exhaust *prior* to filing suit cannot be cured by exhaustion *after* her suit was filed. *McNeil*, 508 U.S. at 112–13. Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's FTCA claims because Plaintiff failed to exhaust her administrative remedies before filing this action.

For these reasons, Plaintiff's claims against the DOJ should be dismissed without prejudice.

II.    Defendant Rochlin's Motion to Dismiss

Rochlin moves to dismiss Plaintiff's claims for lack of personal jurisdiction. *See* Rochlin Mot. Dismiss 4–5 (ECF No. 26). Rochlin contends—and Plaintiff does not dispute—that Rochlin is not a Texas resident.[5] *see id.*; *see also* Response 2 (ECF No. 32) (Rochlin "directly targeted Plaintiff in her home state"). Rochlin further contends that "no action giving rise to Plaintiff's claims" occurred in this District. Rochlin Mot. Dismiss 4, 8. Rather, Rochlin's only alleged contact with this forum is that, during Rochlin's prosecution of Plaintiff in Washington D.C., Plaintiff resided in Texas[6] and allegedly suffered distress, reputational harm, and business loss here. *Id.* at 7–8; Am. Compl. ¶¶ 4, 5 (PageID 154) (ECF No. 20-1).

Plaintiff asserts that this Court may exercise personal jurisdiction over Rochlin because Rochlin "targeted Plaintiff in her home state" by authoring a

---

[5] The certificate of service in Plaintiff's Original Complaint indicates that Rochlin has an address in Florida. Original Compl. 18 (ECF No. 3).
[6] Plaintiff relocated to Florida in June 2025. *See* ECF No. 22.

sentencing memorandum and filing it in the United States District Court for the District of Columbia. *See* Resp. ¶¶ 4, 5 (ECF No. 32). Plaintiff argues that the sentencing memorandum "used Plaintiff's Texas-based speech, business, and reputation as aggravating factors" and was "disseminated by Dallas media outlets" "trigger[ing] reputational harm, financial deplatforming and social exclusion within Texas" and "support[ing] increased surveillance and watchlisting originating from [Texas]." *See id.* But these allegations do not support the exercise of personal jurisdiction over Rochlin.

Rochlin prosecuted the sentencing phase of Plaintiff's criminal case—in the District of Columbia and based on events at the U.S. Capitol. *See* Am. Compl. ¶ 6–11 (ECF No. 20-1). Because of her criminal prosecution in Washington D.C., Plaintiff alleges that she suffered harm in Texas. *Id.* But to establish sufficient "minimum contacts," Rochlin *herself* must have contacts with this forum, not merely with persons who reside here. *See Walden*, 571 U.S. at 285. Nor can the Court exercise personal jurisdiction over Rochlin based on the unilateral actions of "Dallas media outlets," because personal jurisdiction cannot be based on the "unilateral activity of another party or a third person[.]" *See Burger King Corp.*, 471 U.S. at 475 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1985)).

Plaintiff cites, without elaboration, *Calder v. Jones* in support of her argument that this Court may exercise personal jurisdiction over Rochlin. *See* Resp. ¶ 4 (ECF No. 32) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). In *Calder*,

a California actress brought a libel suit in California state court against a reporter and an editor, both of whom worked for the National Enquirer at its headquarters in Florida. *Calder*, 465 U.S. 783, 783 (1984). The plaintiff's libel claims were based on an article written and edited by the defendants in Florida for publication in the National Enquirer, a national weekly newspaper with a California circulation of roughly 600,000. *Id.* at 783, 785. The Supreme Court held that California's assertion of jurisdiction over the defendants was consistent with due process based on the various contacts the defendants had created with California—and not just with the plaintiff—by writing the allegedly libelous story. *Id.* at 785–86, 788–90 (identifying significant contacts making phone calls to "California sources" for the information in their article; causing reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the "brunt" of that injury was suffered by the plaintiff in that State). "In sum, California [wa]s the focal point both of the story and of the harm suffered," and jurisdiction over the defendants was thus "proper in California based on the 'effects' of their Florida conduct in California." *Id.* at 789.

But the Supreme Court has since refined the "effects test" established in *Calder* and clarified that jurisdiction cannot be based on the "random, fortuitous, or attenuated" contacts a defendant has with a forum just because the plaintiff lives there. *See Walden*, 571 U.S. at 286 (Thomas, J.). In *Walden*, the plaintiffs were professional gamblers and residents of Nevada. *Id.* at 280. The defendant, Walden, was a Georgia police officer working as a DEA task force agent at the Atlanta

14

airport. *Id.* at 277. During a layover in Atlanta, Walden seized almost $100,000 in cash from the plaintiffs. *Id.* at 280. Walden also drafted an affidavit to help the government seek forfeiture of the funds. *Id.* at 280–81. The plaintiffs alleged this affidavit was false and prepared with the knowledge that it would cause them financial harm in their home state of Nevada. *Id.* at 281. The plaintiffs then sued Walden in a Nevada federal court under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), alleging Walden "violated their Fourth Amendment rights." *Id.* But the Supreme Court unanimously held that the Nevada court could not exercise personal jurisdiction over Walden. *Id.* at 288–289.

The Supreme Court explained that it was significant that all of Walden's relevant actions—the seizure of the money and the drafting of the affidavit— occurred entirely in Georgia. *Id.* Also, Walden had never been to Nevada, had never conducted business there, and had no physical presence in the state. *Id.* 289. The only connection between Walden and Nevada was the fact that the plaintiffs lived there and felt the economic "effect" of the seized funds in Nevada. *Id.* And unlike the libelous article in *Calder,* which the defendants widely circulated to third parties in California, Walden submitted his affidavit to the local U.S. Attorney's Office in Georgia; the affidavit was not "tethered" to Nevada in any way other than the plaintiffs' location. *Id.* at 290. "Because [Walden] had no other contacts with Nevada, and because a plaintiff's contacts with the forum State cannot be 'decisive in determining whether the defendant's due process rights are violated,'" the court

15

in Nevada could not exercise personal jurisdiction over Walden even if he knew the effects of his conduct would be felt in Nevada. *Id.* at 279.

Similarly, in this case, Plaintiff does not allege that Rochlin has ever been to Texas, established any presence here, or conducted business here. Rochlin's "suit-related conduct" was the prosecution of Plaintiff in D.C. for an offense committed on Capitol Hill. *See* Am. Compl. ¶¶ 7–10 (ECF No. 20-1); *see also Walden*, 571 U.S. at 284 ("[S]uit-related conduct must create a substantial connection with the forum."). Rochlin's conduct, including the filing of the "sentencing memorandum," occurred entirely in the District of Columbia. *See* Am. Compl. ¶¶ 7–10. Rochlin's conduct is thus not "tethered" to Texas in any meaningful way other than Plaintiff's (former) residence here. *See Walden*, 571 U.S. at 290. Indeed, Rochlin's relationship with this forum does not arise out of any contacts that she herself created—her connection to Texas is based solely on her contacts with Plaintiff. But Plaintiff "cannot be the only link" between Rochlin and this forum. *See id.* at 284. And even if Rochlin caused injury to Plaintiff in Texas, "mere injury to a forum resident is not a sufficient connection to the forum." *See id.* at 289–290 ("*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum."). Regardless of where Plaintiff "lives or works, an injury is jurisdictionally relevant only insofar as it shows the defendant has formed contact with the forum State." *Id.* at 290. The "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [her] to the forum in a meaningful way." *Id.* Rochlin's conduct does not.

16

Thus, Rochlin does not have the "minimum contacts" necessary for this Court to exercise specific personal jurisdiction over her—Rochlin's conduct in this case does not create a "substantial connection" with this forum. *See id.* at 284. Accordingly, the District Judge should dismiss Plaintiff's claims against Rochlin without prejudice under Rule 12(b)(2).

### III.   Plaintiff's Motion for Leave to Amend

Also before the Court is Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 30). By her Motion, Plaintiff seeks leave to file a second amended complaint "to address deficiencies raised in Defendants' Motions to Dismiss [], incorporate newly discovered evidence, and clarify claims." Mot. Leave ¶ 1 (ECF No. 30). Plaintiff asserts that the proposed amended complaint "cures issues" raised in the Motions to Dismiss, "refines" the *Bivens* claim against Rochlin, adds new "John Doe" Defendants, and "names the United States as the proper FTCA defendant." *Id.*

Generally, a pro se litigant should be allowed to amend her complaint before it is dismissed. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam). But where a complaint is dismissed, without prejudice, for a jurisdictional deficiency, a pro se plaintiff has no right to amend their pleading. *See id.* at 1054–55; *see also Evans v. Dillard Univ.*, No. CV 15-6841, 2016 WL 4208548, at *2 n. 3 (E.D. La. Aug. 10, 2016), *aff'd on other grounds*, 672 Fed. Appx. 505 (5th Cir. 2017). And leave may be denied where the proposed amendment would remain subject to dismissal *i.e.*, granting leave to amend would be futile. *Varela v.*

17

*Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009)). The District Judge should deny leave to amend for several reasons.

First, the proposed amended complaint still fails to allege any facts that could support the exercise of personal jurisdiction over Defendant Rochlin. *See* Prop. 2d. Am. Compl. ¶¶ 18–20 (ECF No. 30-1).

Second, even if the United States were substituted as the proper defendant, the Court would still lack jurisdiction over the proposed FTCA claims. As discussed, the failure to completely exhaust administrative remedies *before* filing an action under the FTCA is a jurisdictional defect that cannot be cured by administrative exhaustion *after* suit is filed. *See McNeil*, 508 U.S. at 112–13 (emphasis added). Plaintiff's Proposed Amended Complaint alleges that she "submitted administrative tort claims" to unnamed federal agencies between March and July of 2025. Prop. 2d. Am. Compl. ¶ 21 ("FCTA Claim Exhaustion Table"). Again, Plaintiff filed this lawsuit on February 10, 2025, *before* filing any administrative claim, and she concedes that some claims in her proposed amendment remain unexhausted. *See* Prop. 2d Am. Compl. ¶ 21 (requesting a stay of the case pending exhaustion of administrative remedies). "An action that is filed before the expiration of the six-month waiting period, and is thus untimely, cannot *become* timely by the passage of time after the complaint is filed." *See Price*, 69 F.3d at 54 (emphasis added). Accordingly, granting leave to amend to substitute the United States as the proper defendant would be futile.

Finally, the proposed amendment seeks to add unnamed "John Doe" federal agents from the "FBI, DOJ, FinCEN, or related entities" as Defendants. *See* Prop. 2d Am. Compl. ¶¶ 11, 12. But, as Rochlin and DOJ argue, the Court would lack personal jurisdiction over these fictitious defendants, if joined. *See* Resp. Mot. Leave Amend 6 (ECF No. 35); *see also Sorrell v. Dallas, Tex. Bridge Shelter, Staff, Bldg. 2*, No. 3:08-CV-1065-G-BH, 2008 WL 3915347, at *1 (N.D. Tex. Aug. 25, 2008) (Fish J.) ("[N]either the Federal Rules of Civil Procedure nor any relevant statute provides authority for joining fictitious defendants in this suit.") (citing *Taylor*, 661 F. Supp. at 1350)); *Silver v. Perez*, No. SA-20-MC-0655-JKP, 2020 WL 3790489, at *4 (W.D. Tex. July 7, 2020) ("Federal courts, furthermore, lack personal jurisdiction over John Doe defendants."). Moreover, because the fictitious defendants are all purportedly federal officers acting under color of federal law, the proposed 42 U.S.C.§ 1985 (3) asserted against them would be subject to dismissal if leave were granted. *See* Proposed 2d Am. Compl. ¶¶ 1, 21 (discussing wrongful conduct by Defendants who acted "under color of federal authority"); *Taylor*, 661 F. Supp. at 1345 ("The law in this circuit requires dismissal of claims brought under subsection (3) of § 1985 against federal officials if they acted under color of federal law.") (citing *Seibert v. Baptist*, 594 F.2d 423, 429 (5th Cir.), *modified on other grounds,* 599 F.2d 743 (1979), *cert. denied,* 446 U.S. 918 (1980) and *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978)).

Except to the extent discussed above, the undersigned declines to analyze the merits of the claims in Plaintiff's live pleading or the proposed amended

19

complaint. Because the District Judge should dismiss Plaintiff's complaint without prejudice on jurisdictional grounds, and because granting leave would be futile, the District Judge should deny leave to amend. *See Bazrowx*, 136 F.3d at 1054–55; *Chapman*, 969 F.3d at 248 (citing *Smith*, 393 F.3d at 595).

### Recommendation

For the reasons stated, the District Judge should **GRANT** Defendants' Motions to Dismiss (ECF Nos. 26, 27) and **DISMISS** Plaintiff's claims without prejudice and without leave to file a second amended complaint (ECF No. 30).

**SO RECOMMENDED**.

February 26, 2026.                    _____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

The clerk of court will send a copy of this report and recommendation to all parties, and a party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).